# Balance Law Firm

Telephone: +1(212) 741-8080
Facsimile: +1(646) 558-4889
https://balancelawfirm.com

One World Trade Ctr Ste 8500
New York, NY 10007-0089
DC, CT, NJ, MD, WA, AK

April 21, 2023

Via ECF
Hon. Jesse Furman
Thurgood Marshall United States Courthouse, Courtroom 1105
40 Foley Square
New York, NY 10007

**Re: Letter Motion To Sanction Under Fed. R. Civ. P. 37**
*Lead Creation Inc. v. P'ship & Unincorporated Ass'ns Identified on Schedule "A"*, No. 1:22-cv-10377

Dear Judge Furman:

Pursuant to Fed. R. Civ. P. 37(b)(2), Defendants respectfully move the Court for an order with respect to Plaintiff's and its sole shareholder and Chairman Xiaodong Fan's ("Fan") failure to produce documents and to appear for deposition on April 10th or to make arrangements for an adjourned date, both as called for by the Court's Order of March 29th, 2023 (ECF No. 148) (the "Order"). Defendants' service on Plaintiff and Fan was accomplished (ECF No. 153-55) by these means: on Plaintiff at its place of business and on its registered agent in Delaware and Florida (still Mr. Hurckes), and on Fan at his principal place of business and his email address as provided by Plaintiff's former counsel Mr. Hurckes in his declaration (ECF No. 142 ¶5).

The requested order sought is one

(i) directing that the matters embraced in the Order be taken as established for purposes of the action, including that Plaintiff had no sales or manufacturing of flashlights either before or after the TRO in this action was issued and that the patentees and assignors of the patent-in-issue to Plaintiff acted intentionally in failing to make the required patent maintenance payment to the USPTO;

(ii) prohibiting Plaintiff from opposing the matters taken as established under (i); and

(iii) imposing very serious sanctions on Plaintiff and Fan as the Court determines to be just and proper in the circumstances as a strong deterrent to Plaintiff and Fan in their future litigation "efforts" and to discourage others from following their deplorable example.

The Second Circuit has held that "[i]mposing sanctions pursuant to Rule 37 is within the discretion of the district court…." *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012)

The Second Circuit has further held that while courts in the Second Circuit prefer that cases be decided on the merits, "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be

tempted to such conduct in the absence of such a deterrent." *Valentine v. Museum of Modern Art*, 29 F.3d 47, 49-50 (2d Cir. 1994)

When considering whether to impose sanctions pursuant to Rule 37, the Second Circuit considers four factors: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of ... noncompliance." *World Wide Polymers, Inc.*, 694 F.3d at 159 (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)). The factors are not exclusive; nor does each one have to be resolved against the party being sanctioned for sanctioning to be appropriate. *Id*.

Here, Plaintiff's and Fan's failure to comply with the Order is willful, and there is no legitimate explanation for their noncompliance. The Order had been served on Plaintiff and on Fan via both email and mail. It suffices to say that both Plaintiff and Fan have received sufficient service and have had ample opportunity to appear through new counsel or otherwise respond to the Order, but they have chosen not to do so. Their disobedience is a deliberate act.

Throughout the entire case, neither Plaintiff nor Fan ever appeared directly, e.g., submitted a declaration. After Mr. Hurckes was allowed to withdraw as counsel, neither Plaintiff nor Fan has retained new counsel to represent them in this case, and Plaintiff failed to file an answering brief to Defendants' motions to recover against the TRO bond and for attorneys' fees and expenses. That further demonstrates that Plaintiff and Fan are willfully ignoring this court proceeding, and that willful misconduct lasted throughout the entire period relevant to this motion.

Plaintiff was represented by counsel for most of this action to date. Even after Mr. Hurckes was allowed to withdraw as counsel, he remains as Plaintiff's registered agent in Florida. It's reasonable to infer that when Mr. Hurckes withdrew as counsel and thereafter, Mr. Hurckes explained to Plaintiff and to Fan the consequences of not having legal representation before this Court and the consequences of not responding to any court order, including this Order.

Given the completely intentional disregard of the Order and this Court's proceedings by Plaintiff and by Fan ever since Mr. Hurckes' withdrawal as counsel, it's reasonable to infer that only a very substantial sanction would be meaningful, and only such a substantial sanction will suffice to make the point to Plaintiff and Fan that they are not at liberty to ignore court orders at will.

In fact, Plaintiff and Fan did not suddenly decide to disobey the Order recently, but have been evasive since the very beginning of this case and have taken steps to prepare to disappear from this Court even before this lawsuit was brought. Plaintiff itself issued a Unanimous Written Consent in late October or early November, 2022 signed by its sole shareholder and sole Director of the Board Fan in which it appointed Mr. Hurckes a second director in unequivocal and unlimited terms, and Mr. Hurckes was appointed the sole member of the Infringement Committee of Plaintiff with sole responsibility for bringing this action and for interaction with the USPTO, though in his deposition Mr. Hurckes stated that he ran all decisions by Fan for his approval. Acting in his role as a Director of Plaintiff, Mr. Hurckes verified the truthfulness of the

complaint in this action last December, even though during his deposition conducted on April 10th as noticed, Mr. Hurckes acknowledged (as well as asserting the attorney-client privilege with respect to the information) that he has no information on the volume of Plaintiff's sales or manufacturing of flashlights either when the complaint was filed, or before or after the TRO issued. Plaintiff's and Fan's abuse of the judicial process is flagrant.

    From this failure, one can fairly infer that Plaintiff had no flashlight sales because it had no flashlights to sell. It was purely a patent troll and hence could suffer no irreparable harm. Moreover, it actually stood to gain from having Defendants continue selling since, if it were successful on its infringement claim, it could include in its damages the profits from those sales by Defendants. So in fact, Defendants' continued operations would actually have conferred a benefit, not a harm, on Plaintiff if Plaintiff were acting as a legitimate business in seeking the TRO. Plaintiff's conduct here makes it clear that Plaintiff's sole purpose in commencing this action and in seeking the TRO was to use them to coerce Defendants into paying Plaintiff a large settlement to go away. Plaintiff's disappearing act here is a stark affirmation of its motives and intent and of its gravely injurious conduct for which it can offer no plausible explanation or defense, and its disappearance acknowledges that reality.

    Lightly capitalized single-purpose companies are ideal vehicles for trolling. In those circumstances especially, the attorney's role is vital to the judicial process since the attorney needs to be a counselor for sure but also a guardian of the legal system to prevent its abuse. Here, Fan knew that if he found a lawyer to do his bidding, he could set up a shakedown scheme to attack business owners with personal impunity and little risk using a lightly funded corporation he could ditch if need be. In these circumstances, Defendants respectfully submit that ways need to be found to impose consequences on the human actors directly. In this situation, Fan as sole shareholder and Chairman of Plaintiff needs to feel those consequences personally. If not, he'll know that if he can find the "right" attorney and another dubious patent, he can repeat the process all over again with another vulnerable group of business owners.

    In light of these factors, Defendants respectfully request that the Court sanction Plaintiff, as well as Fan individually, sufficiently strongly to demonstrate that there are severe consequences to acting in such an irresponsible and injurious manner and to abusing the court processes. That kind of conduct is worthy of imposition of the three consequences listed in paragraph (i) through (iii) above. Therefore, Defendants respectfully request that an order issue imposing those consequences.

Under the Court's Rules, motions for sanctions may not be made by letter.  Thus, application DENIED without prejudice to renewal by formal motion on or before **April 27, 2023**.  The deadlines set forth in the Court's April 17, 2023 Order, ECF No. 169, remain in effect.  The Clerk of Court is directed to terminate ECF No. 171.

SO ORDERED.

April 21, 2023

Respectfully submitted,

/s/ *Beixiao Liu*
Beixiao Robert Liu, Esq.